In the matter of the settlement of the Estate of SETH S. WHITMAN, deceased.

APPEAL FROM BOONE.

Where a will directs that the debts of the testator shall be paid out of the avails of personal property unless other arrangements can be made; that a house shall be built; that certain legacies shall be paid his children at their majority, and for that purpose his executors may dispose of real estate; that his wife should have the control of all his property, until the youngest child shall become of lawful age, for the support, education and maintenance of the children; and directs how the property shall be divided: Held, That after the payment of the debts, and the reservation of sufficient estate to satisfy the specific legacies, the residuum should be under the control of the wife, until the event should occur, when, under the will, the remainder was to be distributed, and that the wife received not in fee, but as trustee.

The wife has not even a life estate in the remainder, but only had the power to control in the interim, before distribution was required, within the limit directed by the will.

Should the wife attempt to abuse the trust, a court of equity would restrain her, and compel a proper application of the estate.

Under such a will, the wife is not to account to the Probate Court, until the time fixed by the will for the distribution of the estate.

Money received on the sale of land, after payment of the debts, and the specific legacies due, after reserving enough for the other legacies, should be paid to the widow.

THIS was originally an appeal from the Boone County Court in probate, heard before I. G. WILSON, Circuit Judge, at February term, A. D. 1858, of the Boone Circuit Court. The finding of the County Court was affirmed, and an appeal was taken to this court.

Matilda Whitman, executrix of Seth S. Whitman, deceased, Samuel Bennett, executor of said Seth S. Whitman, Clarinda, Whitman, administratrix of Hiram Whitman, now deceased, Benjamin F. Lawrence, James B. Crosby and Asher E. Jenner, securities in the official bond of said Matilda Whitman, Hiram Whitman and Samuel Bennett, as executrix and executors of said Seth S. Whitman, appeared. The minor heirs of said Seth S. Whitman, namely, Julia Whitman and Charles N. Whitman, appeared by R. S. Molony, their guardian *ad litem*.

And thereupon the accounts presented before the said County Court for its action in this matter, being before this court for its action thereon, which said accounts are of record in this court, and were filed in the court below.

And thereupon the appellants in this proceeding, said James B. Crosby, Benjamin F. Lawrence and Asher E. Jenner, Samuel Bennett and Clarinda Whitman, by their attorneys, present to the court now here, a stipulation, in the words and figures following, to wit:

IN THE MATTER OF ACCOUNTING OF THE EX'RS } Boone Circuit Court,
OF S. S. WHITMAN, DECEASED. } February Term, 1858.

Appeal from the County Judge of Boone county.

It is stipulated in this cause that the accounts passed upon in the court below, shall stand as if the same had been proven and allowed in this court, so far as relates to the amounts found, both of debt and of credit, of said accounts.

It is further stipulated, that the will of Seth S. Whitman, the decree in the Circuit Court of Boone county, and all evidences of title and of conveyances, whether of record or not, and the copies of proceedings, receipts, etc., under the order of the court of Rock county, Wisconsin, which have heretofore been read and received in evidence in the court below, as well as all matters of written evidence heretofore presented and received in evidence in the court below, be received and read without objection to their competency, but reserving all questions as to the legal weight of said evidence. And that all the facts found in said County Court are to remain, and be considered the same in this court as in said County Court. It being hereby intended that this court is only to try and determine whatever questions of law arise in said cause.

Which, by consent of all parties, is received and read herein as evidence, subject to exceptions as to relevancy and materiality upon the taking and settling the accounts in this matter of each and every fact thereby found.

Thereupon there is read to the court, subject as aforesaid, the report and finding of the judge of the said County Court, and which is included in the record in this cause.

REPORT OF A. C. FULLER.

And now this day, to wit, August 17th, 1857, being the third Monday of August, and being a special term of the Probate Court in and for said county, comes on to be heard the report of Matilda Whitman and Samuel Bennett, surviving executors of said S. S. Whitman.

The consideration of said report, examination of vouchers for disbursements made by said executors, and hearing of testimony in relation thereto, coming on to be heard for determination, and it appearing to the court from inspection of the records of this court, that during the years A. D. 1852 and 1853, and prior to December 20, 1853, there was received by said Bennett, executor as aforesaid, in money due to the said estate, the sum of four thousand five hundred and thirty dollars and ninety-eight cents.

And it further appearing from an examination of said records, that there has been received by Hiram Whitman, as executor as

In the matter of the Estate of Seth S. Whitman.

aforesaid, prior to December 20, 1853, the sum of seventy-three dollars and eight cents of money as aforesaid. And it further appearing from said records that Matilda Whitman, executrix, as aforesaid, had received, prior to December 20, 1853, money as aforesaid, the sum of nine hundred and fifty-nine dollars and three cents, exclusive of one hundred and sixty-two dollars and forty-one cents, which last sum is included in her report, as received from John H. Herbut, but which sum by agreement of parties is included in receipts by S. Bennett, and was received by her from said Bennett, and exclusive of the sum of seventeen hundred and fifty-seven dollars and fifty cents, paid by said Bennett to said Matilda Whitman, and included in her report filed December 20, 1853.

And it further appearing from the report of the said Matilda Whitman, of May 12th and June 18th, 1857, and from the testimony of witness, and agreement of parties, that since said 20th December, 1853, said Matilda Whitman, as executrix as aforesaid, has received the additional sum of two thousand six hundred and sixty-one dollars and eighty-four cents of personalty, belonging to said estate, making the total amount received from the personal estate of said testator, as will be seen from said records, eight thousand two hundred and twenty-four dollars and ninety-three cents.

And it further appearing to the court from the evidence, that at the special term of the Boone Circuit Court, A. D. 1853, in chancery sitting, such proceedings were had, that said executors, by a decree of said court, and in pursuance of the powers contained in the last will and testament of said S. S. Whitman, were authorized among other things to sell and convey certain real estate, mentioned and described in said decree, of which said S. S. Whitman died seized, and out of the proceeds of such sales, to pay the debts of said estate, and apply what might be necessary for the support and maintenance of the said Matilda Whitman, and the support, maintenance and education of the children of the said S. S. Whitman.

And it further appearing that in pursuance of such powers, contained in said will and testament, and of such decree, the said executors have from time to time sold and conveyed a part or the whole of said lands, and said Matilda Whitman has realized from such sales the sum of five thousand one hundred and fifty-three dollars and fifty cents.

It further appearing to the court that said S. S. Whitman, at the time of his death, held a bond for conveyance to him of valuable real estate, in the county of Rock and State of Wisconsin, upon which bond there was due, or became due after the death of said Whitman, several hundred dollars, which sum was

paid to the person or persons entitled thereto, by said executors, out of money belonging to said estate, and has been credited to them in their executor's account in this court. That subsequent to said Whitman's death, a conveyance was made, and the title to said lands was taken in the name of the said Matilda Whitman, and the whole or a portion thereof conveyed by her, soon after, to the minor children of said Seth S. Whitman. That in the year 1853, an application was made on behalf of said children, by their next friend, to the Circuit Court of said Rock county, in equity, for the sale of the interest of said children in said lands, and that such proceedings were thereupon had in said court, that by a decree of said court, the interest aforesaid to a portion of said lands, was sold, and the proceeds thereof directed to be paid over to said Matilda Whitman, as general guardian of said children, under appointment made in this court previous thereto.

That at said sale, R. S. Molony became the purchaser of a portion of said lands, and paid therefor the sum of twenty-four hundred and fifty dollars. One thousand eight hundred and thirty-seven dollars and fifty cents of which sum was, June 24, 1854, receipted by said Matilda Whitman as general guardian of said children as aforesaid, to John R. Pease, who was by said court appointed special guardian of said infants, and directed to pay the same over to her as aforesaid. That there was not, in fact, any money paid by said Molony to said special guardian for said land, but a conveyance made by said Molony to said Matilda Whitman of one hundred acres of land in this county, at two thousand dollars, and the remaining sum of four hundred and fifty dollars paid to her by said Molony in railroad stock. That another portion of land was purchased by Nathaniel Crosby, for the sum of sixteen hundred dollars. And that on account thereof, said Matilda Whitman, as general guardian as aforesaid, on the 12th of January, 1854, receipted to said Pease as aforesaid, the sum of twelve hundred and fifteen dollars and thirty-three cents. That there was not, in fact, any money paid by said Crosby for said land, but that said Crosby, on the 20th December, 1853, in consideration thereof, and of the further sum of two hundred dollars paid him by Matilda Whitman, conveyed to her certain lands in Boone county, subject, however, to a mortgage thereon, held by John Saxton, of four hundred dollars. That other portions of lands in Rock county, have been sold to different persons under said decree, and that said Pease, special guardian as aforesaid, has paid over to Matilda Whitman under said decree, $264.38, on account of sale to J. D. Cole; $40.12, on account of sale to O. J. Dearlow, and $20.62, on account of sale to J. W. Willard, making the

In the matter of the Estate of Seth S. Whitman.

total amount paid by said persons, on account of said sales, $4,375.12, of which sum, $3,377.95 was receipted by Matilda Whitman aforesaid.

It further appears to the court that said Matilda Whitman has purchased other real estate in Boone county, taking the title in her own name, and incumbered a part of the same, as also a part of the land thus conveyed to her by Nathaniel Crosby as aforesaid, by judgments and mortgages to the amount of several thousand dollars, and on the 16th of January, 1857, conveyed such portions thereof as she had not previously sold, to Julia and Charles Whitman, minor children as aforesaid, and that the incumbrances by mortgage aforesaid, as appears by her report of June 18, 1857, are as follows: One to L. W. Pray, of principal, $1,000; one to Mr. Fox, $300, and one to Tompkins, of $600.

And it further appearing to the court that said Matilda Whitman has received on account of sales made of portions of lands thus purchased of said Crosby, the sum of two thousand seven hundred and ten dollars and seventeen cents, and the sum of seven hundred and thirteen dollars from sales of wood cut from lands thus purchased of R. S. Molony and Nathaniel Crosby.

And it further appearing to the court that neither Samuel Bennett nor Hiram Whitman, nor Matilda Whitman, in her character as executrix, were parties to the suit or proceeding in the Circuit Court of Rock county aforesaid, and that neither of them as executors had executed any conveyance of said lands in Rock county to the purchasers thereof.

And it further appearing to the court from the records aforesaid, that on the 18th day of February, 1853, there was allowed by this court to Samuel Bennett the sum of $192.17, for services and disbursements as such executor; and on the 14th day of December, 1853, the further sum of two hundred and seventy-eight dollars and ninety-four cents. And that on the 20th December, 1853, there was allowed by this court to Hiram Whitman, for services and disbursements as executor, the sum of ninety-eight dollars and sixty-three cents. And that on the 20th December, 1853, there was allowed by this court to Matilda Whitman, as executrix, on account of debts paid by her against said estate, and specific legacies ordered to be paid, and by her paid, the sum of sixteen hundred and thirteen dollars and forty-six cents; and on the 12th and 13th May, 1857, the further sum of fifteen hundred and forty-four dollars and eighty-four cents, on account of debts and legacies as aforesaid by her paid; and on the 18th June, 1857, the further sum of six hundred and fifty dollars and ninety-eight cents, on account of debts as aforesaid by her paid.

In the matter of the Estate of Seth S. Whitman.

And it further appearing to the court now here, from vouchers produced and testimony taken, that the said Matilda Whitman has expended the further sum of five hundred and twelve dollars and sixty-four cents on account of debts due against said estate, which sum is hereby allowed against said estate.

And it further appearing from vouchers produced and evidence introduced, that said Samuel Bennett has expended the further sum of twenty-five hundred dollars and two cents on account of debts paid by him against said estate, which sum is hereby allowed against said estate.

And it further appearing to the court, from the evidence, that there has been expended by said executors in the support, maintenance and education of the children of said S. S. Whitman, and the support and maintenance of Matilda Whitman, since the death of said S. S. Whitman, out of the personal estate and the proceeds of the sales of real estate made under the decree of the Boone Circuit Court as aforesaid, the sum of four thousand one hundred and ninety-six dollars and ninety-eight cents, it is ordered and adjudged that the same be and is hereby allowed against said estate. And, as it appears from the evidence that the proceeds of such sales last above mentioned were in fact received by said Matilda Whitman, and the said sum of $4,196.98 was expended by her in the support of said family, the said sum of $5.153.50 is placed to her debit, and said sum of $4,196.98 is placed to her credit. It is further ordered and adjudged that the proceeds of sales of lands in Boone county, amounting to $2,710.17, appearing in said Matilda Whitman's report of June 18, 1857, be and the same is hereby rejected. Also, the proceeds of sales of lands in Rock county, Wisconsin, in said report. The proceeds of sales of wood, amounting to $713, contained in said report, and $1,900, borrowed. Pray and Tompkins, mentioned in her said report, are hereby rejected from executor's account. It is further ordered and adjudged, that the item of one hundred and twenty dollars, charged in said report of Matilda Whitman, of June, 1857, as paid to John Saxton, as interest on mortgage, be and the same is hereby rejected.

The last will and testament of said Seth S. Whitman, is as follows:

I, Seth S. Whitman, of the town of Madison, county of Dane, and State of Wisconsin, being of sound mind and memory, viewing the uncertainty of life, and being desirous of arranging my secular concerns preparatory to my coming dissolution, do ordain and declare this my last will and testament:

1st. That I will my soul to God, who gave it, and that' my body be decently interred.

In the matter of the Estate of Seth S. Whitman.

2nd. That my debts be by my executors paid, out of the avails of my personal property, unless there can be some other arrangements made.

3rd. That after my just and legal debts are paid, that there be built on my real estate, at Monteray's addition to Janesville, or land laying south of it, a residence, and other suitable buildings convenient, for a residence for my family.

4th. That my beloved son, Ogden H. Whitman, be paid, out of the avails of my property, five hundred dollars, when he shall arrive at the lawful age of twenty-one years, it being willed to him by his grandmother, Anna Nicholas, and now remaining in my possession.

5th. That my beloved son, C. Colden Whitman, and daughter, Julia H. Whitman, and Charles N. Whitman, be severally paid the sum of five hundred dollars each, when they shall severally arrive at the age of twenty-one years.

6th. That my executors shall, as my children at lawful age, dispose of, if necessary, any of my real estate for the payment of the several sums willed to them.

7th. That my beloved wife, Matilda Whitman, shall have the control of all my property until my youngest surviving child shall become of lawful age, for their support, education and maintenance.

8th. That my executors pay to the following named benevolent societies, the following sums, (viz:) Three hundred dollars to the American and Foreign Bible Society ; three hundred dollars to the Baptist Home Missionary Society ; and three hundred dollars to the Baptist Missionary Union, to be paid as soon as my debts are settled, and a house and other convenient buildings are made for the accommodation and convenience of my family.

9th. I will and bequeath to my beloved niece, Eliza A. Brown, one village lot, in the addition of Monteray to Janesville, to be selected by my executors, valued at seventy-five dollars.

10th. That after my youngest surviving child becomes of lawful age, the residue of all my property at that time, be divided as follows, (viz:) To my beloved wife, Matilda Whitman, I will and bequeath one-third of my property, for her support and maintenance during her natural life, at her decease to be divided between my surviving children, or given for missionary purposes, at her discretion ; and the other two-thirds of my property to be equally divided between my son, C. Colden Whitman, Julia H. Whitman, and Charles N. Whitman, provided at the discretion of my executors it shall be proper, it may be equally divided between Ogden H. Whitman, C. Colden Whitman, Julia H. Whitman, and Charles N. Whitman.

---

---

11.   I do hereby constitute and appoint Samuel Bennett and Matilda Whitman, executors of this my last will and testament.

In witness whereof, I have hereunto set my hand and seal, at Madison, this 19th day of December, in the year of our Lord 1851.

SETH S. WHITMAN. [SEAL.]

In presence of CHARLES LORD,  .
    JOSEPH GRAY.

CODICIL.

I do hereby, of my own free will, and being of sound mind, make this further addition to the above will: I give and bequeath that portion of my property which would fall to my wife in the event of its division before her death, to the above named Baptist Benevolent and Missionary Societies, in case of her death before such division ; provided always that if my executors think the sum alluded to in this codicil should be needed by the children, then I give the same to them, at their discretion. And I also hereby appoint my brother, Hiram Whitman, executor, in addition to the executors above named.

In testimony whereof, I have hereunto set my hand and seal, on this 29th day of December, in the year of our Lord eighteen hundred and fifty-one.

SETH S. WHITMAN. [SEAL.]

Subscribed in presence of
    CHAS. LORD,
    CORA WILSON.

W. T. BURGESS, for Appellants.

B. C. COOK, and S. WILCOX, for Appellees.

WALKER, J.   The testator, Seth Whitman, died after having made his will, leaving a large amount of real and personal estate.   By his will, Matilda Whitman his widow, Samuel Bennett, and Hiram Whitman, were appointed executors, and qualified as such.   They presented an application to the Circuit Court of Boone county, for authority to sell real estate, for the payment of debts, the support, education and maintenance of the family, and to obtain a construction of the will, and be discharged from the erection of a dwelling-house for the use of the family, as was required by the provisions of the will.   The court, on the hearing, authorized the sale of all or so much of the real estate, as might be required for the purposes specified. Under this decree, sales were made to an amount between five and six thousand dollars.   This proceeding was instituted in the Probate Court of Boone county, for an account of the proceeds

of the sale of the real estate, as well as of the personalty of the estate. And upon the adjustment in the Probate Court, there was found to be in Matilda Whitman's hands, seventeen hundred and eighty-seven dollars and seventy-seven cents, for which the court refused to allow her a credit. From this proceeding, an appeal was prosecuted to the Boone Circuit Court, and upon a trial in that court, the finding of the Probate Court was affirmed, and the court found that the money in her hands, was liable to be accounted for, and paid over under the order of the Probate Court, for its distribution. From the judgment of the Circuit Court, Bennett and Matilda Whitman bring the cause to this court, by appeal.

And for a reversal of the judgment of the Circuit Court, they insist that under the provisions of the will, the widow was not liable to account for the residue of the estate, after the payment of the debts and specific legacies, until the youngest child attained its majority. To determine this question, it may be proper to give a construction to a portion of the will, under which they have been acting, and by the provisions of which, their duties and rights must be governed. The questions presented by the record, arise on the following provisions of the will:

" 2nd. That my debts be by my executors paid, out of the avails of my personal property, unless there can be some other arrangements made.

" 3rd. That after my just and legal debts are paid, that there be built on my real estate, at Monteray's addition to Janesville, or land laying south of it, a residence, and other suitable buildings, convenient for a residence for my family.

" 4th. That my beloved son, Ogden H. Whitman, be paid, out of the avails of my property, five hundred dollars, when he shall arrive at the lawful age of twenty-one years, it being willed to him by his grandmother, Anna Nicholas, and now remaining in my possession.

" 5th. That my beloved son, C. Colden Whitman, and daughter, Julia H. Whitman, and Charles N. Whitman, be severally paid the sum of five hundred dollars each, when they shall severally arrive at the age of twenty-one years.

" 6th. That my executors shall, as my children at lawful age, dispose of, if necessary, any of my real estate, for the payment of the several sums willed to them.

" 7th. That my beloved wife, Matilda Whitman, shall have the control of all my property until my youngest surviving child shall become of lawful age, for their support, education and maintenance.

" 10th. That after my youngest surviving child becomes of lawful age, the residue of all my property at that time, be divided as follows, (viz:) To my beloved wife, Matilda Whitman, I will and bequeath one-third of my property, for her support and maintenance during her natural life, at her decease to be divided between my surviving children, or given for missionary purposes, at her discretion; and the other two-thirds of my property to be equally divided between my son, C. Colden Whitman, Julia H. Whitman, and Charles N. Whitman, provided at the discretion of my executors it shall be proper, it may be equally divided between Ogden H. Whitman, C. Colden Whitman, Julia H. Whitman, and Charles N. Whitman."

It will be perceived, that the second clause of the will requires that his executors should pay his debts, out of the avails of his personal property, unless some other arrangement could be made. But what that arrangement should be, we deem it unnecessary to determine in this case. By the third clause, he requires that they should erect a dwelling-house for the use of his family, as a residence, after the payment of his debts. This would of necessity have to be done with the estate in the hands of his executors, and he thereby gave them power to apply the necessary amount of the funds of his estate for that purpose. By the fourth and fifth clauses, he gives specific legacies to his children, and by the sixth, empowers his executors, if it shall be necessary, when they become entitled to receive these legacies, to sell any portion of his real estate for the purpose of satisfying them. The duty of paying his debts, and these legacies are imposed upon the executors. And for that purpose they should at all events retain undisposed of, a sufficient amount of the testator's real or personal estate, to pay and discharge them.

By the seventh, he directs that his wife shall have the control of all his property, until his youngest child shall become of lawful age, for their support, education and maintenance. By this provision he could not have intended to place in her hands the whole of his estate, because he had already directed his executors to apply so much of it, as should be required in the payment of his debts, and to discharge the specific legacies previously bequeathed. The amount necessary for those purposes, had already been specifically appropriated, and from the language employed, he could not have intended to revoke those provisions. And if by this latter clause, all of his property was placed under her control until the majority of the youngest child, it would be an attempt to delay the payment of his debts, and would postpone the payment of these specific legacies, until that time. The only reasonable construction that it can receive,

In the matter of the Estate of Seth S. Whitman.

is that after the payment of the debts, and the reservation of enough of his estate to discharge the specific legacies, the residuum of his estate should then be under the control of his wife, until the event should occur, when the remaining portion should be distributed, as directed by the will.   And when she received it under the will, it was not in fee, but only as a trustee for the uses specified.   She did not by the will, take even a life estate in this remainder of the property, but only the power to control it, for the purposes named, during the term or period that should intervene, before the distribution is required.   But when she became invested with this remaining portion of the estate, it was with the power to control it for the purpose of supporting, educating, and maintaining the children, until they should respectively become of age.   There is no intention manifested by the provisions of the will, to give her the absolute unconditional control of the property, but on the contrary the power to control it, is limited to the objects specified, and she is not authorized to go beyond those purposes, but within the limit prescribed, she may exercise her discretion.   The manner or extent of the support, education and maintenance is not prescribed ; but if she were squandering and misapplying the fund, a court of equity would restrain her, and compel its application to the purposes of the trust declared in the will.   The testator has not required her to account to the probate court for the application of the fund, but by the will it is removed from the control of that court, and placed within hers, and the probate court has no power to require her to account for this fund, before the time arrives by the provisions of the will, for its distribution.   Then when this money was received on the sale of the land, it formed a portion of the estate, and after the payment of the debts, and specific legacies that might then be due, the executors should have paid the remainder, after reserving enough to pay the remaining legacies, over to the widow, and her receipt of the remainder would discharge them to that extent.   The court below erred in the judgment rendered, holding that the widow was liable to pay this money on an order of distribution, as the fund is not liable to such an order until the period arrives for a final distribution of this residuum, as required by the will.

The judgment is reversed.

*Judgment reversed.*