## CITY OF DUNLEITH

### v.

### REYNOLDS, SAULPAUGH & Co.

1. TAXATION BY CITIES—*of their power to impose taxes on personal property of non residents.* Under a city charter granting power to the city council to collect taxes for city purposes on all property, real and personal, within its limits, the personal property of non residents, the actual *situs* of which being within the territorial jurisdiction of the city, is subject to taxation, for the corporate purposes of said city.

2. In an action of assumpsit against the city of Dunleith, deriving power from its charter to impose a tax for corporate purposes on all property within its limits, to recover for money paid to the city under protest, upon a tax assessment on the personal property of the plaintiffs, situate in the city, the plaintiffs being non residents, and claiming such property was not subject to taxation by the city, the evidence showed that plaintiffs were contractors to build railroad bridges, and had a contract to build a bridge at Dunleith, across the Mississippi river; that while engaged in the building of said bridge, they had large quantities of rock, engines, flat boats, teams, etc. located for nearly a year in said city, the same being used in the building and construction of the bridge; the rock was put into the bridge, and the engines, flat boats, teams etc. being such as were used by the plaintiffs in their business as contractors: *Held*, such property was subject to taxation by the city.

APPEAL from the Circuit Court of Jo Daviess county; the Hon. BENJAMIN R. SHELDON, Judge, presiding.

The opinion states the case.

Mr. R. H. MCCLELLAN, for the appellant.

Mr. E. A. SMALL, for the appellees.

Mr. CHIEF JUSTICE BREESE delivered the opinion of the Court:

This was an action of assumpsit, brought to the Jo Daviess circuit court, by Elisha P. Reynolds, Thomas Saulpaugh and

others, as partners, by the firm name of Reynolds, Saulpaugh & Company, against the city of Dunleith, to recover one hundred and eighty-six dollars, alleged to have been received by the defendant to the use of the plaintiffs.

The bill of particulars filed with the declaration, is as follows: To money had and received by the city of Dunleith for the use of plaintiffs, being that amount of money paid to the city under protest by said plaintiffs, in settlement of a tax of that amount, assessed, or claimed to have been assessed, in the year 1868, upon certain property, belonging, or supposed to belong, to plaintiffs, which tax plaintiffs claim and insist was illegal, and paid the same under protest and under compulsion—one hundred and eighty-six dollars.

The parties went to trial on the general issue, and there was a verdict for the plaintiffs. A motion for a new trial was overruled, and judgment rendered on the verdict.

To reverse this judgment, the defendant has appealed to this court.

The facts in the case show that plaintiffs were contractors to build railroad bridges, and had a contract to build a bridge across the Mississippi river, from Dunleith to the Iowa shore, in 1868, commencing the work in February of that year, at which time they had at Dunleith a quantity of rock used in building the bridge and approaches to it, brought from Iowa and from Joliet, and engines, flat boats and derricks, and teams used on the work. The derricks were brought down the river from St. Paul, in Minnesota—some of the flat boats were built at Dunleith, and some brought there, from what point is not stated. The property was all being used in constructing the bridge and approaches. The rock was put into the bridge, and the teams, derricks and flat boats were such as were used by the plaintiffs in their business as contractors. The last stone in the work was laid in October, 1868, and the work completed in November of that year. The plaintiffs, except one of them, a Mr. Henry, then lived in Rock Island, and had for many years. Mr. Henry was a resident of Iowa.

The firm had property in Rock Island, and their principal place of business and office were there.    They are contractors to build bridges, and go from place to place for that purpose. By section ten of the charter of the city of Dunleith, the city council had power to levy and collect taxes for city purposes, upon all the property, real and personal, within the limits of the city, not exceeding one per cent per annum, unless a majority of the inhabitants vote to raise more; and the council may enforce the payment of the same in any manner, to be prescribed by ordinance, not repugnant to the constitution of the United States, or of this State.

How this power was exercised by the city council does not appear, nor is there any point made on that; but it appears that the collector of taxes for the city in 1868, having the tax books in his possession, demanded the taxes, stated to be one hundred and eighty-six dollars, of the plaintiffs in November of that year, and they refused to pay them.    He then levied on an upright stationary engine of the plaintiffs, and advertised it for sale, but it was not sold, the plaintiffs replevying it.    The action of replevin was dismissed at the March term, 1869, at the costs of the plaintiffs, and a writ of *retorno habendo* awarded.

This effort of the city collector to collect this tax, originated in an order of the city council, requesting the mayor to instruct that officer to proceed to collect the tax by distress and sale, if not paid forthwith.

It does not appear that a writ of *retorno* issued, or that the property was returned to the officer levying upon it, but it remained at Dunleith until about the tenth of May, 1869, when it was shipped by plaintiffs to another point.

This being the condition of things, on or about the nineteenth of April, the attorney of the plaintiffs informed the city clerk that he had the money, and was ready to pay the tax for the plaintiffs whenever any one was authorized to receive it, but he would pay it under protest.    The city council being informed of this, they did, on that day, enter on

their records an order that the city clerk should receive from the attorney of the plaintiffs, the taxes assessed against them, and give a receipt therefor. Accordingly, on the twenty-first of April, the city clerk executed and delivered to the attorney of the plaintiffs this receipt:

$186.—Received, Dunleith, April 21, 1869, of Reynolds, Saulpaugh & Co. one hundred and eighty-six dollars, in full of tax on personal property, belonging (or supposed to belong) to the said Reynolds, Saulpaugh & Co. which property was listed for taxation by and for said city of Dunleith, in and for the year A. D. 1868, as follows, to-wit:

|   |   |   | Tax. |
|---|---|---|---|
| Two Engines | $ 4,000 | 00 | $ 24 00 |
| Ten Flat Boats | 4,000 | 00 | 24 00 |
| 25,000 feet Lumber | 300 | 00 | 1 80 |
| 500 yards Rock | 20,000 | 00 | 120 00 |
| Derricks and Irons | 2,000 | 00 | 12 00 |
| Horses and Wagons | 700 | 00 | 4 20 |
|   |   |   | $186 00 |

And I further certify that I collected the above sum of said Reynolds, Saulpaugh & Co. by order of the mayor and council of the city of Dunleith, in Jo Daviess county, Illinois; and that said Reynolds, Saulpaugh & Co. denied the legality of said tax, and paid the same under protest; said Reynolds, Saulpaugh & Co. by their attorney, then and there notifying me that they should institute suit for the recovery of said sum of one hundred and eighty-six dollars.

JOHN M. DAGGETT,
*City Clerk of the city of Dunleith.*

It appears there was no collector of taxes when the above order of the city council was entered, and it further appears that the tax book and warrant for the collection of the taxes, had been returned before that time.

On paying the money, the attorney said, plaintiffs did not wish to have any trouble about the engine, or any suit on the replevin bond. The clerk said they had the engine once and did not want it again; that they had the replevin bond and intended to look to it. Nothing was said about paying the money to release the engine. The attorney told him the tax was illegal, that he would pay it under protest, and bring suit to recover it back. It was stated by the clerk, on his cross examination, that the council had taken no action in regard to bringing suit on the replevin bond. He further stated that the rock assessed for taxation was brought to Dunleith on the cars, and unloaded and mostly cut and prepared for the bridge at Dunleith.

The questions presented on these facts are, was the tax legally assessed by the city authorities of Dunleith? If it was not, was the tax paid voluntarily, with a knowledge of the law and facts?

In determining the first question, we have only to look at the provisions of the charter, the section of which, applicable to this case, we have quoted. By that it appears, power is given the city council to levy and collect taxes for city purposes, upon all the property, real and personal, within its limits, not exceeding one per cent per annum. It is insisted by appellee, that as the general revenue law provides for the taxation of personal property where the owner of it resides, this law must have the same operation. That this can not be so, is illustrated by supposing that none of the owners of this property had a residence in this State, which was the fact with regard to one of these plaintiffs, Mr. Henry.

What, then, is the true spirit and meaning of this statute, giving power to a municipal authority to tax all property, real and personal, within the limits of the city? As to real property there can be no difficulty about that, as it is not denied it is subject to taxation for State, county and city purposes. What, then, must be the *situs* of personal property in order to subject that to city taxation? Under the general revenue

4—53RD ILL.

law, each owner of property is required to be called upon at his residence by the assessor, for a list of his taxable property, and no matter where it may be situated within the State, it is listed at his residence, and the taxes there paid for State purposes.   But it is not so where an assessment is ordered by the authorities of a municipal corporation, for corporate purposes. The tax is levied on the property where situate, not temporarily, but where it is in such a position of use as to become property in the city.   No one would contend that a box of goods, in transit from an eastern city to a place beyond the Mississippi river, detained by a casualty at any point on this side of that river, could be taxed for any purpose by the local authorities of that point.   But if, while being so detained, the owner seeks to make profit out of them by selling them, or otherwise, we see no objection to the exercise of the taxing power over them, if they are within reach of the assessor at the time he is required by law to make out his assessment roll.

What is the principle underlying this power to tax ?   Is it not the protection that is afforded by government to property, compensation for which takes the form of a tax ?   This will not be denied.   Now, of protection, there is more than one description—that of the general government, under whose broad shield we are enabled to acquire property in security and without molestation—that of a State, whose power is scarcely less in affording protection in the acquisition of property, and that of the more subordinate power of a municipal corporation.   They all, to the extent of their several powers, are required to and do afford protection to property against violence.

In *Wilkey* v. *The City of Pekin*, 19 Ill. 160, this court held that property within the corporate limits of a city, was subject to taxation for city purposes, under a charter similar to that of Dunleith, and it was upon the ground of the protection afforded by the city to such property, such protection being an equivalent for the right of taxation.   The legislature intended

to confine the power of taxation to property actually within their territorial jurisdiction.

The steamboat in question, having been registered at St. Louis, and only occasionally stopping at Pekin, was held not to have been within the corporate limits of Pekin, its *situs* being at the place where registered, and therefore, a part owner of it living in Pekin, was not liable to taxation for his interest in the boat.  The principle is here distinctly announced, that taxation of property is the equivalent for the protection afforded it by the authority within whose territorial jurisdiction it may be situate.   Can there be any doubt that this engine was permanently fixed at Dunleith ; that the rock also was permanently placed in a bridge there, and in its approaches—that all the property taxed had its actual *situs* at that city nearly one year, and at a time when the assessor was required by law to act ?   The interest of Mr. Henry, he being a non resident, could not be taxed any where for general revenue purposes, nor could that of the other three proprietors living and having their offices at Rock Island, be there taxed for the corporate purposes of that city, for the reason its *situs* was not there when it became taxable.  The actual *situs* of this property being at the city of Dunleith, at the time the taxing power of the city was called into action, we have no doubt it was there properly assessed and taxed for the corporate purposes of that city.   They had afforded protection to it for nearly one year, its owners were making profit out of it by its use during all that time, and had they been disturbed by mob violence in its use, the city would have been compelled to make compensation, if the owners of it were not in fault.

We can see no ground on which to base the allegation that this property was not liable to taxation by the authorities of Dunleith.   The taxes were but an equivalent for the protection afforded it by the city while it was within their territorial jurisdiction.   This being so, it is unnecessary to consider any other questions raised.  The judgment of the circuit court is reversed, and the cause remanded.   It is the further order of the

court, that no costs be taxed against appellees for the abstracts furnished by the appellant, as they are not in compliance with the rules of this court.   40 Ill. XIII.

*Judgment reversed.*