# THE FIRST NATIONAL BANK OF MENDOTA

*v.*

# DANIEL SMITH, Collector, etc.

1. TAXATION OF NATIONAL BANKS. The 41st section of the act of congress of June 3d, 1864, providing for a national currency, expressly recognizes the right of a State to tax all shares in the stock of national banks, but the Supreme Court of the United States has held, that this tax must be levied upon the individual shareholders, and not upon the capital stock of the bank in the aggregate.

2. SAME—*place where taxable.* Under the acts of congress on this subject, shares in such banks are subject to taxation by the State at the place where such banks are located and not elsewhere, without regard to the domicile or place of residence of the shareholders.

3. SAME—*limitation of the power of the States.* The only limitations upon the power of the States to tax the shares of such banks imposed by Congress are, that they shall not be taxed at any other place than where such banks are located;—that the taxation imposed shall not be at a greater rate than -upon other moneyed capital in the hands of individual citizens of the State and that the tax so imposed shall not exceed the rate imposed upon the shares of any of the banks organized under the authority of the State where such banks are located.

4. SAME—*power of Legislature to fix situs of shares for taxation.* While it is true as a general rule, at common law, that personal property has no *situs* of its own, but follows the person of the owner, the rule is one of convenience only, and there is no constitutional provision to prohibit the legislature from changing the rule. Therefore, the act of 1867 which provides for taxing the shares of national banks at the place where such banks are located, without regard to the residence of the owners of such shares, is constitutional and valid.

5. The separation of the *situs* of personal property from the domicile of the owner for the purposes of taxation is familiar doctrine in the courts of this country, and has been sanctioned by this court.

6. NATIONAL BANK—*nature of shares.* It seems that shares in national banks are in the nature of *choses in action.* They are mere demands for dividends as they become due. The certificates of stock are merely evidence of the holder's title to a given share in the property and franchises of the corporation of which he is a member. The bank is the trustee of the stockholders, who must come to its counter for their dividends and their share of assets on final liquidation, and no transfer of stock can be completed until shown upon the books of the bank.

APPEAL from the circuit court of La Salle county; the Hon. EDWIN S. LELAND, Judge, presiding.

Mr. FRANK J. CRAWFORD and Messrs. CROOKER & HUNTER, for the appellant.

Messrs. MAYO & WIDMER, for the appellee.

Mr. JUSTICE McALLISTER delivered the opinion of the Court:

This was a bill in equity exhibited in the circuit court of La Salle county, by the First National Bank of Mendota, against the tax collector of the township of Mendota, in which the bank was situated, to restrain the collection of the taxes

assessed for the year 1871, against the stockholders of the bank, upon their respective shares of stock. The defendant demurred to the bill. The court sustained the demurrer, and no amendment of the bill being proposed, it was dismissed. The complainant appealed to this court.

The ground upon which the bill seeks to restrain the collection of these taxes is, that the taxes are levied in La Salle county against all the shareholders, while only a part of them reside in that county, and the others reside in Bureau county. The position taken is, that there is no power to levy the tax against the shareholders residing in Bureau county, because their shares must be considered as having their *situs* only in the county where the holders reside. Therefore the taxes, as respected all that class, were illegal and void, and being illegal and void as to them, they were likewise as to stockholders residing in the county where the bank is located, by operation of the rule of the constitution requiring uniformity. For these reasons, and because the bank is trustee of all the stockholders, it is insisted that upon the ground of avoiding multiplicity of suits, the bill can be maintained by the bank.

The propositions upon which this bill is based, when specifically stated, are briefly these : (1) That in order to a valid tax the legislature must have power or jurisdiction over the person or property in the county where the tax is authorized to be levied. (2) That, inasmuch as a portion of the owners resided out of the county, though in the State, and the *situs* of their shares was at their domicile, the legislature was powerless to change that *situs*, so that there could be no jurisdiction of either the person or property in the county of the bank, and, therefore, as to all that class of owners, the tax was void. And, lastly, inasmuch as the tax was void in respect to owners of shares who *did not* reside in La Salle county, the tax was likewise, under the constitutional rule of the State requiring uniformity and equality, void in respect to those who *did* reside in that county.

The 41st section of the act of congress passed in 1864, expressly recognizes the right of the States to tax all shares in the stock of national banks. Notwithstanding this recognition, the right was soon denied by the banks; and the question first came before this court in the case of the *People v. Bradley*, 39 Ill. 130. It was there held that the stock was taxable, as had previously been held by the court of appeals in the cases of the *City of Utica* v. *Churchill*, and *Van Allen* v. *Supervisors*, 33 N. Y. 162.

In Bradley's case, as in the New York cases, the tax was levied upon the capital stock of the bank in the aggregate, and not upon the individual shareholders. These cases were taken to the Supreme Court of the United States, and reversed upon the sole ground that the tax must, under the act of Congress, be levied upon the individual shareholders. 3 Wallace, 572; 4, ib. 459. In this mode, it was held the shares could be taxed.

In obedience to this decision of that court, our legislature, in 1867, passed an act requiring the taxes to be assessed upon the individual shareholders " in the county, town or district where such bank or banking association is located, and not elsewhere, whether such stockholders reside in such county, town or district or not."

Having successfully resisted the attempt to tax the stock of the bank as a corporation, as appears by the cases referred to, it is now sought to prevent taxation of the stockholders upon their shares. This language is considerately employed, and it is believed to be not too broad ; because, as will be presently seen, if the grounds now taken on behalf of the stockholders are maintainable, it will only be necessary that the stock of the various national banks in the State shall be held in the name of non-residents, in order to withdraw the shares altogether from the reach of State legislation for taxation.

Before proceeding further in this case, it should be observed, that the question involved depends entirely upon the laws

of this State, and is in no manner embarrassed by any act of congress.

The 41st section of the act of congress above referred to, under which these banks are organized, required State taxes to be imposed " at the place where the bank is located, and not elsewhere." But by an act of Feb. 1868, congress declared these words—" place where such bank is located, etc.," to mean " the *State* in which the bank is located and not elsewhere."

This provision places the shares in such banks under the taxing power of the State wherein the bank is located, and prohibits their being subject to State taxation elsewhere. This limitation, with the further ones that the taxation imposed should not be at a greater rate than upon other moneyed capital in the hands of individual citizens of the State where made; and that the tax so imposed, under the laws of any State, upon the shares of the association authorized by that act, should not exceed the rate imposed upon the shares of any of the banks organized under the authority of the State where such association is located, constitute the only limitations by congress on the taxing power of the State where the bank is located, none of which have any application to this case. Our legislature was therefore left at liberty to impose the same tax upon the value of shares in national banks located here, which it could upon any other moneyed capital of our citizens, and fix the *situs* of such shares in its discretion, unless restrained by our own constitution. We have made this reference to the acts of congress in order to show that the questions involved depend solely upon the laws of the State, and are in no respect embarrassed by any laws of congress.

We will now consider the validity of the arguments urged in favor of the exemption of stockholders of such banks located within this State, from State taxation, under the act of 1867.

The counsel for appellant cite as authority the case of the *Union National Bank* v. *The City of Chicago*, decided in 1871 in the Circuit Court of the United States for the Northern District of Illinois. We have been furnished with a copy of the opinion delivered in that case, and have given it a very careful examination. The same question now under consideration was presented there, and was decided adversely to the right of taxation upon the same grounds which are urged by counsel for appellant in the case before us. While we have great respect for the opinion of the learned district judge who decided that case, we find ourselves unable to concur either in his reasoning upon the question or the conclusion at which he arrives.

In order that the position of the court in that case, and that of the counsel for the appellant in the case before us, may be fairly stated and understood, we quote the language of the court, whose reasoning the counsel for appellant adopt as the principal foundation for their argument.

After giving the clauses of our State constitution of 1848, requiring uniformity in taxation, the opinion proceeds as follows: " And by a series of adjudications of the Supreme Court of Illinois, it has become settled law that these provisions are *restrictions* upon the power of taxation by the legislature, or any authority under it. All taxes therefore assessed by municipal corporate authorities must be proportionate and uniform within the jurisdiction of the body imposing them. Where there is jurisdiction neither of the persons nor property, the imposition of a tax would be *ultra vires* and void. Jurisdiction is as necessary to valid legislative as to valid judicial action.

" Shares of stock are incorporeal personal property, and as such, are held incapable of having any *situs* save at the domicile of the owner. In the eye of the law they have in themselves no locality. They accompany the person of the owner where he goes, and he may deal with them and dispose of them according to the law of his domicile, which, if he die intestate,

governs their disposal. The act of June 13, 1867, directs taxes to be assessed by the authorities of counties, towns, cities and districts upon the shares of these banks in the county or town where the bank is located, without regard to the *residence* of the owner or the *situs* of the shares, and in that respect I regard it as a violation of the constitution of the State.

" The complainants show, and it is not denied, that their shareholders are scattered over the State, and such taxation upon them appears to me a clear infringement of the constitutional requisition that all assessments by the corporate authorities of cities, etc.,shall be uniform in respect to persons and property within their limits. This compels the taxation of the stock owned by residents of the State in the county, city, town, or district where they reside, for the purpose of collecting county, city, town, or district taxes, and a failure to do so destroys the rule of uniformity with respect to property within the limits of the body imposing the taxes, while neither the persons nor property are within the jurisdiction of the taxing power at the place of the bank's location.

" If then this statute is void as to those who do not reside in the district where the bank is located, it must be as to those who do; because it would then be undeniable that every person would not be obliged to pay a tax in proportion to the value of his or her property, and the taxes for State purposes would not be levied with uniformity. And if the law be not valid as to shares of stock belonging to residents, the shares of non-residents can not be taxed, because the provisions of section 41 of the act of 1864 inhibit any tax upon non-residents that is not imposed upon residents of the State, and such a regulation would be in conflict with the federal constitution, which says: 'the citizens of each State shall be entitled to all the privileges and immunities of the citizens of the several States.' I can not avoid the conclusion that this law violates the imperative rule of the constitution."

There are two vital points involved in the foregoing reasoning and conclusion which challenge serious attention. One

is, in effect, that all shares in the stock of national banks in this State, though claiming and receiving the protection of our laws and of our State and municipal governments, will wholly escape State, county, town, or district taxation if owned by non-residents of the State, and will be beyond the reach of any statute the legislature can pass. Neither can they be taxed where the owner resides.

They will thus escape taxation anywhere, although by the act of Congress under which these banks are created, there is a clear and manifest intention that stockholders should be subject to taxation in the State where the bank is located. The reasoning is, that they can not be taxed in this State because, by a mysterious and indissoluble tie, the *situs* of the shares is with the non-resident owners. They can not be taxed where the owners live, because, by the act of Congress, they can be taxed only in the State where the bank is located.

The other point of this decision is, that if an assessor includes in his assessment certain property not legally subject to taxation, not only may the owner of such property enjoin the collection of the tax illegally imposed upon that property, but all other tax payers, though their taxes are thereby lessened in amount, may avail themselves of *his* grievances and enjoin the collection of taxes assessed upon their property; and this upon the theory that the addition to the assessment roll of property not subject to taxation violates the constitutional requirement of equality and uniformity. We are unable to understand how this conclusion is reached. When property subject to taxation is wholly left out of the assessment, it might be contended with much plausibility that uniformity was not attained. But even in that case this court has held that the collection of the tax can not be restrained by equity. *Merritt* v. *Farris*, 22 Ill. 511; *Schofield et al.* v. *Watkins et al.* ib. 66.

And again, in *Dunham et al.* v. *City of Chicago*, 55 Ill. 357, where the omission by the assessors to assess property subject to taxation was set up as a defense to the application for

judgment against delinquent lands, it was held by this court that such omission afforded no sufficient ground for declaring the taxes void.

But whatever ground of complaint there might be on the part of owners of assessed property because other property liable to taxation had been omitted from the assessment, and thus *increasing* their burdens, we are entirely unable to comprehend how tax payers can complain because property *not* liable to taxation had been included. The result to them is simply that their taxes are thereby lessened; which is certainly a very novel reason for asking an injunction.

The case in the United States Circuit Court to which we have been cited, was a bill brought by the bank to restrain the collection of city taxes from any of the shareholders, whether resident or non-resident in the city of Chicago. The shares of the residents were, even in the view of the court, properly taxable there. The shares of the non-residents were, in the view of the court, not within the city, but attached to the persons of their owners, at the domicile of the latter, and were therefore not taxable there. For aught that appeared there, all the property in the city *subject* to taxation was assessed. The addition to that assessment of property belonging to non-residents, and not within the city, according to the view of the court, may have been, if that view were correct, a wrong to the non-resident owners, but certainly was none to the resident tax payers, and did not destroy either equality or uniformity of taxation as between them.

We have commented at such length on this position of the federal court because the same position is taken by counsel in the case before us, on the authority of that decision, and the same relief is asked for the resident stockholders that was granted there.

As is apparent in the extract from the opinion already given, the decision rests upon two propositions: First, that a tax can not be assessed where there is no jurisdiction of either the person or the property. Second, that personal property .

has no *situs* of its own, but follows the person of its owner, and if this is not always true of tangible personal property, it is of incorporeal personal property like shares of bank stock.

The correctness of the first proposition is not questioned. It is undoubtedly true that the legislature could not constitutionally authorize Cook county to levy a tax upon lands or other property having a fixed *situs* in La Salle county.

The second proposition is correct as a general rule of the common law. It is one of obvious convenience in determining what law shall govern in the distribution of estates of deceased persons. But while it is a rule of the common law, that is all that can be said of it. The fallacy of the reasoning of the federal court referred to, and of the counsel for the appellant, seems to be in assuming that this rule of the common law can not be changed by statute. The legislature, by the act of 1867, certainly intended to change it in regard to bank shares; and to fix their *situs*, for all purposes of taxation, in the county where the bank is situated. The language employed is broad enough to effect the change, and it has been made, if the legislature had the constitutional power to make it. Where is the constitutional provision which prohibits the change? We have been referred to none ; and in what provision lurks the prohibition we confess ourselves at a loss to conjecture. That the decision of the federal court assumes and is based upon the theory that the *situs* of the shares is inseparable, even by statute, from the person of the owner, is undeniable. Yet we are pointed to no provision of the constitution prohibiting what would seem to be an exercise of one of the plainest and simplest of legislative powers. That the legislature can change the rule of the common law in this respect, seems to us a proposition too plain for argument; and if the power had not been practically denied by a court of such respectability we should deem it one so palpably clear as not to admit of controversy.

Story, in his Conflict of Laws, section 550, speaking of this question of *situs*, says:

" The general doctrine is not controverted that although movables are for many purposes to be deemed to have no *situs* except that of the domicile of the owner, yet this being but a *legal fiction*, it yields whenever it is necessary for the purposes of justice that the actual *situs* of the thing should be examined."

The separation of the *situs* of personal property from the domicile of the owner for the purposes of taxation is familiar doctrine in the courts of this country, and has been sanctioned by this court in various cases. In *Wilkey* v. *The City of Pekin*, 19 Ill. 160, it was held that a resident of that city could not, under the charter, be taxed on personal property not having its actual *situs* within the city. The *situs* of the property was held, under the charter, not to attach to the person of the owner. In *Mills* v. *Thornton*, 26 Ill. 300, a like severance of the *situs* from the person, for the purposes of taxation, was again recognized. In the *City of Dunleith* v. *Reynolds*, 53 Ill. 45, the court held certain personal property within the city subject to taxation, though the owners resided elsewhere. These, it is true, were cases of tangible property. But in the *Board of Supervisors* v. *Davenport*, 40 Ill. 198, the same principle was applied to property not tangible. It was there held that money belonging to a resident of New York, and sent to an agent in Tazewell county to be loaned, was taxable by the county. The property was a mere *chose in action*, but its *situs* was, by the terms of the revenue law, severed from the owner and attached to the agent in this State who loaned the money. It might be said in reference to the latter case that the possession of the agent was that of the principal. If this be conceded, it may also be said that the bank files this bill as trustee of the stockholders; and as such possesses the lawful control over the rights and interests of the *cestuis que trust*, much greater than that of a mere agent for the loan of money.

Shares in joint stock companies are not, however, strictly speaking, *chattels,* and it has been considered that they bear a closer resemblance to *choses in action,* or, in other words, they are merely evidence of property.   They are, it is held, mere demands for dividends as they become due, and differ from movable property, which is capable of possession and manual apprehension.   " If," says C. J. Shaw, " a share in a bank is not a *chose in action,* it is in the nature of a *chose in action,* and, what is more to the purpose, it is personal property."  Ang. & Ames  on Corp. 9th Ed. sec. 560 ; *Hutchins* v. *State Bank,* 12 Met. 421.

" Certificates of stock," says Comstock, J. in *Mechanic's Bank* v. *N. York R. R. Co.* 3 Kern. 627, " are not securities for money in any sense, much less are they negotiable securities.   They are simply the muniments and evidence of the holder's title to a given share in the property and franchises of the corporation of which he is a member."

Under this view of the law, it would seem to be eminently proper for the legislature to fix the *situs* of property so anomalous in nature, for the purposes of taxation.   The question, however, is not whether the act of 1867, under which these taxes were levied, was just or reasonable, but simply whether it was within the limits of legislative power.   If it was not, then there is no power in our legislature to change any artificial rule of the common law, and many of the acts within our statute books are void for the same reason.

But in our opinion the act of 1867 was not only constitutional, but was also a very proper and even necessary exercise of legislative power.   It prescribes no unreasonable rule.   It places the *situs* of bank shares where, from the very nature of the property, it ought to be placed for the purposes of taxation.   The act of Congress itself contemplates a severance of the *situs* of such shares from the person of their owner, by providing that they should not be taxed except in the State where the bank is established.   But apart from this, it is really much more reasonable to fix the *situs* of shares at the

place where the bank is located, and where it must continue to do its business or wind up its affairs, than to separate by legislation tangible personal property from the person of its owner. The latter may be in one county to-day, and in another to-morrow. Its actual *situs* is liable to constant change, and the title may be transferred by the owner wherever he may be. But not so with bank shares. The banking corporation has a fixed locality, where it must transact its business, and there wind up its affairs when it ceases to exist. It is the trustee of the stockholders, who must come to its counter for their annual dividends and their share of assets on final liquidation. Its debts are payable at its counter, and credits receivable there. No transfer of stock can be completed unless shown upon the books of the bank. A list of the names and residence of all the stockholders must be there kept. The property, in its own nature, possesses much more of the immobility of real estate than any other personal property which we can now call to mind. The legislature, then, did no violence to the nature of this property when it fixed the *situs* of the shares at the locality of the bank.

We have seen that the exercise of the power by the legislature was both proper and legitimate. We have shown why it was proper and legitimate. It was necessary, because if this act had not been passed much of the bank stock in the State would have soon escaped taxation by modes so obvious as to need no specification. As it is, this is impossible. The assessor of each county knows every bank in the county, and has but to go to the books to ascertain the ownership of the shares. The act, instead of, defeating uniformity and equality of taxation, which is the theory upon which its invalidity is asserted, does, in our judgment, tend to secure these results more effectually than any other method that could have been adopted.

This question has been before the highest courts of New York and New Jersey, and they have decided as we do.

*National Bank* v. *Cook,* 3 Vroom, 347; *The People* v. *Commissioners of Taxes,* 35 New York, 423.

We know of no authority that can be cited in support of the ruling of the circuit court of the United States for the Northern District of Illinois, to which we have already sufficiently adverted. The case just cited from 35th New York, in which this point was expressly ruled, was afterwards carried to the Supreme Court of the United States; this point was not deemed of sufficient importance to be raised before that court; and the judgment of the court of appeals of New York was affirmed there without reference by the court to the question. 4 Wallace, 244.

We can not regard the attempt of the national banks to shield their stockholders from all State taxation as at all meritorious. They offer no grounds for the alleged exemption which we can regard as even plausible.

Although their franchises are conferred by act of Congress, still, all their business, so far as conducted with reference to profit, is done under our State laws, the same as corporations created by the laws of this State. It is by the laws of the State that their business transactions are governed, and by the same laws that their property is protected. So that they are under the same duty to contribute to the support of the State and municipal governments as any natural person or State corporation may be. Unless exempted by some plain rule of law, they should not ask a court of equity to relieve their stockholders from that duty.

*Decree affirmed.*