## Farmers and Merchants Bank of Vandalia v. The City of Vandalia.

1. TAXATION—*Property May be Assessed After the Return of the Assessor's Books.*—If an assessor discovers that some personal property has escaped his notice, shortly after the return of his books, he may assess

it thereafter, if done in time for the taxes to be extended thereon, so that it may bear its equal burden of taxation with other property.

2. SAME—*Assessor's Books—Duty.*—The assessor's books are not his warrant of authority. His duty being a continuous one until performed, he may lawfully supplement a former report by another, assessing omitted property.

3. SAME —*Complaints Against Assessments.*—The rule that one making a complaint against an assessment must present the same in the first instance to the boards of review, is based upon the doctrine that where there is a remedy at law chancery will not intervene ; but where the assessment is made after the meeting of the boards of review, a court of chancery will afford a remedy.

4. SAME—*Payment Under Duress.*—Taxes illegally assessed, if paid voluntarily and not under protest, can not be recovered back.

5. SAME—*Stockholders in State Banks—Assessment of.*—The tax upon shares of stock in State banks, not the property of the bank, must be levied upon the individual shareholder and not upon the bank, and if illegally assessed and paid under duress, the shareholder and not the bank must sue for its recovery.

6. ACTION FOR MONEY HAD AND RECEIVED—*To Recover Taxes Illegally Collected.*—The action for money had and received is equitable in its nature, in which the plaintiff can only recover so much money as he can show the defendant *ex æquo bono* ought not to retain. It lies to recover the amount of taxes illegally collected.

7. SAME—*Collection of Taxes, When Not to be Enjoined.*—When property is legally liable to taxation, and the assessment has been made by an officer *de facto* or *de jure,* exercising an office to which the power to assess property for taxation is incident, a court of equity will not enjoin the collection of the taxes for that reason alone.

**Memorandum.**—Assumpsit to recover taxes illegally assessed. Appeal from the Circuit Court of Fayette County; the Hon. JACOB FOUKE, Judge, presiding. Declaration for money had and received. Plea of the general issue; jury waived and trial by the court; finding and judgment for defendant; appeal by plaintiff; submitted in this court at the August term, 1894. Affirmed. Opinion filed March 23, 1895.

HENRY & GUINN, attorneys for appellant.

J. F. BLANKENSHIP, city attorney, and FARMER, BROWN & TURNER, attorneys for appellee.

MR. JUSTICE SAMPLE DELIVERED THE OPINION OF THE COURT.

The appellant brought this suit to recover $726.88 of city taxes, which it claims was illegally assessed and paid by it to the collector under protest.

It is based on the common count of money had and received to the appellant's use. The undisputed facts are that appellant is organized as a bank under the banking laws of this State; that the assessor of the township in which the bank is situated, within the time limited by law in the year 1891, presented to the cashier of the bank a corporation blank for the assessment of its property, which did not contain a list of the stockholders, and which the cashier filled up by stating the assets of the bank and the liabilities, with the view of having the assessment made on the difference between these two items, which in this case amounted to $10,630, which was done.

This assessment, with all the assessments, was returned to the county clerk on July 1, 1891. Thereafter, probably in August, the attorney of the bank, who was also a director, having observed the bank's assessment as returned, declared it was erroneous and not in accordance with law. Thereupon the assessor, doubtless being informed of his error, took a stockholder's blank to the cashier and requested him to fill it out, which he did except as to the column headed, "Fair cash value as determined by the assessor." This blank, so filled out, contained columns giving, first, the names of stockholders; second, their residence; third, number of shares held by each; fourth, the market value of each share; fifth, the fair cash value as determined by the assessor, all relating back, as appears on the face of the paper, to the first day of May, 1891. This list so made out by the cashier and assessor was dated September 7, 1891, and filed as of that date in the county clerk's office. This list shows that there were 1,000 shares, of the value of $31.29 each share, making an aggregate of $31,290.

The county clerk extended the taxes against the bank on this assessment and ignored the former one of $10,630. The collector demanded payment of the taxes so assessed, the share of which going to the city of Vandalia was $726.88, which was paid by the president of the bank.

There is some conflict in the evidence as to whether the payment was voluntarily made, or under what is termed

legal duress. The position of appellant is, first, that the assessment was utterly void, for the reason, as stated, that the assessor, after he had returned his books, had no official power to make assessments; that to permit him to do so at such a late day would deprive and did deprive appellant of the right of having its assessment reviewed by the township and county authorities, boards organized for that purpose by law; second, that the tax was paid by it under legal duress after protest.

The cause was tried below before the court, to which certain propositions of law were submitted and passed upon as follows:

Proposition first: " The court holds as a matter of law under our statute, that a township assessor, under township organization, has no power to make a new assessment of personal property after the meeting of the board of review and after he has returned his assessor's book into the county clerk's office, and taken the oath that he has completed his assessment as required by law. Refused.

Proposition second : " The court holds that under our law a township assessor, under township organization, loses jurisdiction over both the subject-matter of the assessment of property for taxation and the person of the property owner when he returns his assessor's books into the county clerk's office, and makes his return thereon as required by law, and after that he can neither make new assessments, nor amend those already made and returned on his books." Refused.

Proposition third : " The court holds that an assessor of a township under township organization, is not elected for any particular period of time, but is elected to make an assessment of the property in his township for taxation, and when that is completed he is a *functus officio*." Refused.

Proposition fourth: " A township assessor under township organization in this State has no power to either lessen or increase the value of assessments made by him and returned by him on his books after the county board has reviewed and equalized the assessments, even with the consent

and knowledge of the property owner whose assessment is increased or diminished." Held.

Proposition fifth: "Where a township collector makes demand for the taxes that appear to be extended on his books against a property owner of personal property, and says he will have to make a levy if payment is not made, and payment is made because of that threat, then such payment can not be voluntary, and if the tax itself was illegally assessed the property owner may recover the tax back in an action against the collector, whilst the money remains in his hands, or from the municipality for whom it was collected after the collector has paid it over to it." Held.

The court refused to hold that the assessor, after the return of his assessor's book, thereby lost the power to make assessments thereafter on personal property. This holding is assigned as error. The law has been settled in this State, that the legality of assessments does not depend on being made on or before July 1st. Enright v. People ex rel., etc., 79 Ill. 214; Wright v. People ex rel., 87 Ill. 582; St. Louis Bridge Co. v. People ex rel., 128 Ill. 422. Section 90 of the Revenue Act is directory.

The failure of a board of review to meet to review assessments, does not vitiate the assessment. Sec. 88, Chap. 120.

The failure of a county board to equalize assessments does not vitiate the same. Mix v. The People, 72 Ill. 241.

It is evident the legislature, by Secs. 280 and 281, Chap. 120, intended to safeguard all assessments that the assessor had the power to make, without regard to informality or the time the same were made. While section 191 may be said to specifically apply to assessments of real estate, yet its language is deemed expressive of the legislative intent as to all assessments. It provides that "no error or informality in the proceedings of any of the officers connected with the assessment, not affecting the substantial justice of the tax itself, shall vitiate or in any manner affect the assessment thereof."

It is insisted, however, these provisions of the law and the cases cited do not apply, for the reason, as claimed, the assessor without the book had no power to make any assessment; that after its return to the county clerk on July 1st, he was *functus officio*.

The assessor's books made by the county clerk relate wholly to real estate. Sec. 66, Chap. 120. The book itself nor any certificate thereto empowers the assessor to make assessments. There is no warrant attached to it, as there is to the collector's books. He can assess real estate, though not listed in the books. Sec. 77. The personal property, of course, is not listed in the book when received from the county clerk.

The owner or agent is required to list personal property. Sec. 78. After such listing, then its value shall be assessed, and the assessor shall " enter the same in his book." Ibid. We do not understand that section applies to bank stock. Sec. 36 provides, " it shall be the duty of the assessor to ascertain and report to the county clerk a correct list of the names and residences of all stockholders 'in any such bank, with the number and assessed value of all such shares held by each stockholder." Sec. 37 then makes it the duty of the county clerk to " enter the valuation of such shares in the tax lists, in the names of the respective owners of the same, and shall compute and extend taxes thereon the same as against the valuation of other property in the same locality." The assessor and county clerk acted under these sections in this case.

If these views are correct, then the assessor's book itself was not essential to the authority of the assessor to act in making this assessment, even if it should be held to be so as to the value of property required to be entered in his book, which is not conceded. As to such property, the value of which must be entered in his book, in view of the provisions of the law and decisions thereon above referred to, we do not believe that his assessment thereof, after the return of his book, would be deemed more than an irregularity. His power and duty is given and imposed by law

and not by mere process. If he discovers that some personal property has escaped his notice, shortly after the return of his books, no reason is perceived why he should not be permitted to perform his duty and make the assessment thereafter, so that it may bear its equal burden of taxation, if done in time for the taxes to be extended thereon. The assessor's books not being the warrant of authority, but his duty being a continuous one until performed, it is believed he can lawfully supplement his former report. If such assessment should deprive the party assessed of the right of review, then, doubtless, a court of chancery would afford him a remedy, if the assessment was excessive.

It has been held such complaints must be brought before such boards (Adsit v. Lieb, 76 Ill. 18; English v. People, 96 Ill. 566), but the decisions are based on the rule that where there is a remedy at law, a court of chancery will not intervene.

This action for money had and received is an equitable action, in which a plaintiff can only recover so much money as he can show the defendant *ex aequo bono* ought not to retain. Watson v. Wolverton, 41 Ill. 241. There is no question but that these bank shares were liable to taxation and that the assessment would have been legal, even on appellant's theory, if made while the assessor had his book in his possession. If this appellant had filed its bill in equity for relief, then evidently it would have been compelled to offer to do equity, without regard to the form or time of the assessment. If the property was legally liable to taxation and the assessment was made by an officer *de facto* or *de jure*, exercising an office to which the power to assess was incident, a court of equity would not enjoin the collection of the entire tax. Munson v. Minor, 22 Ill. 594. As stated in case—Pacific Hotel Co. v. Lieb, 83 Ill. 604, if the property assessed is subject to taxation and is assessed no more than its ratable share of taxes, it matters not whether the assessment was made in the mode pointed out by the statute or not. There is no proof the shares of stock were excessively assessed. The shareholders then fairly and equitably owned

the money which the bank is seeking in this equitable action to recover back.

The evidence does not show, in our judgment, that the tax was paid under protest, forced by legal duress. The cashier testified that it was, but he did not make the payment and was not present when it was made. There is no evidence of corporate action that the taxes would be paid under protest. Dr. Higgins, the president of the bank, paid the tax. He did not testify in the case. The collector testified that about the 26th of January, 1892, the doctor told him to make out the receipt and he would pay the tax; that about the 15th day of February thereafter he went into the bank and passed through to the doctor's office, who then paid the tax and took a receipt therefor, and that the doctor made no protest; that as he was going out of the office, the cashier came in and said, "Doctor, never pay that, will you?" and Dr. Higgins says yes, and that was all that was said. This evidence is not contradicted by any one.

There seems to us to be an insuperable objection to this appellant maintaining this action, which was not discussed by counsel on either side.

This assessment was made under section 35 of the Revenue Act. It provides: "The stockholders in every bank located within this State * * * shall be assessed and taxed on the value of their shares of stock therein in the county, town, district, village or city where such bank is located and not elsewhere, whether such stockholders reside in such place or not." Sec. 37 provides that "the county clerk shall enter the valuation of such shares in the tax list in the names of the respective owners of the same." Sec. 39 makes it the duty of the bank to retain dividends on such shares to pay such taxes, and if not paid, the collector can sell such shares to pay the tax thereon, like other personal property.

The evidence shows the tax was extended against the individual shareholders and not against the bank.

The stock is not taxed as belonging to the corporation and could not be legally so taxed. First Nat. Bank v.

Farmers & Merchants Bank v. City of Vandalia.

Smith, 65 Ill. 44–47. The Supreme Court of this State had to reverse its decision in People v. Bradley, 39 Ill. 130, in that respect, because of a decision of the Supreme Court of the United States, referred to in 65 Ill. *supra.* That court held the tax must be levied upon the individual shareholders, and our statute was made to conform to that decision. Hence, after the payment of the tax, the remedy, if any, would be at law by the individual stockholder. It was his property that was assessed and not that of the bank.

The judgment is affirmed.