(No. 29345.—

HENRY HENRYS *et al.*, Appellees, *vs.* HOWARD D. RABOIN *et al.*—(CHRISTIE H. MEENTS, Admr., Appellant.)

*Opinion filed Sept. 18, 1946—Rehearing denied November 18, 1946.*

CHARLES LEROY BROWN, and FRANKLIN J. STRANSKY, both of Chicago, and BRUCE A. CAMPBELL, of East St. Louis, for appellant.

C. J. AHERN, of Dwight, TUESBURG & ARMSTRONG, of Pontiac, and CASSIDY, SLOAN & CRUTCHER, of Peoria, for appellees.

Mr. JUSTICE MURPHY delivered the opinion of the court:

This is an appeal from a decree of the circuit court of Livingston county. The constitutional questions raised give this court jurisdiction by direct appeal.

The controversy is as to the liability of the estate of Richard R. Meents, deceased, to pay the stockholders' constitutional superadded liability on nine shares of stock held by the estate, which were issued by the Farmers' State Bank of Cullom. The bank was organized in 1917 and closed by the Auditor of Public Accounts April 2, 1943. When closed, its total deposit liability was $478,801.57. Its deposits were insured in the Federal Deposit Insurance Corporation and of its total deposit liability the insurance company paid $406,446.92. Each depositor who received

payment of all or a part of his deposits from the insurance company assigned to the company, to the extent of the amount paid, all claim he had against any stockholder of the bank arising out of the superadded liability imposed by section 6 of article XI of the constitution. Thereafter the company, pursuant to congressional requirement (U.S.C.A. Title 12, section 264(1)(7),) waived all rights, causes of action and claims it had against all stockholders by reason of the several assignments from the depositors and by right of subrogation. It was stipulated that, to give full force and effect to the waiver, if any judgment should be entered against the stockholders, such judgment should either be abated before entry or satisfied after entry in the proportion that the sum of $406,446.92 bears to the sum of $478,801.57. There is no complaint that the judgment of $136.08 entered against the estate of Richard R. Meents is not in accord with the stipulation.

The administrator, appellant here, contends the constitutional provision (section 6 of article XI) which imposes a superadded liability on stockholders of banks is void and has been since its adoption in 1870. The second proposition advanced for the reversal of the decree is, that if it is to be held that the constitutional provision was valid when adopted, it has by reason of certain Federal legislation enacted in recent years become invalid. All the contentions made center on these two general propositions. They will be considered in the order stated.

In the seventy-five years that section 6 has been a part of the fundamental law of the State, the General Assembly, the State's administrative officers, and the courts have always treated it as being valid and enforcible against stockholders of State banks. As far as we can determine, the attack now made on its validity has never been previously asserted. Such long and uninterrupted application clothes it with a strong presumption of validity.

Section 6 of article XI of the constitution provides: "Every stockholder in a banking corporation or institution shall be individually responsible and liable to its creditors over and above the amount of stock by him or her held to an amount equal to his or her respective shares so held, for all its liabilities accruing while he or she remains such stockholder."

Both contentions urged by appellant for reversal recognize the well-established doctrine that ours is a dual form of government; that in every State there are two governments, the State and the United States; and that each is sovereign with respect to the objects committed to it and neither sovereign with respect to the objects committed to the other. With this principle as a basis, the proposition is advanced that the language of section 6 "every stockholder in a banking corporation or institution" is all inclusive and brings within its provisions stockholders of banks organized under Federal laws as well as stockholders of banks organized pursuant to State statute. It is argued that the unauthorized assumption of jurisdiction over national banks is so interwoven with the authority the State might exercise over State banks that the valid cannot be separated from the invalid and that thereby section 6 is void for all purposes.

Since *McCulloch* v. *Maryland*, 4 Wheat. 316, 4 L. ed. 579, there has been no question as to the power of Congress to enact laws for the organization and operation of banks. It is firmly established that banks organized pursuant to acts of Congress are under the exclusive jurisdiction of the Federal government and any State law which undertakes to limit or control such banks is void. (*Maricopa County* v. *Valley National Bank*, 318 U. S. 357; 87 L. ed. 834; *Easton* v. *Iowa*, 188 U. S. 220, 47 L. ed. 452.) The power to determine whether stockholders of national banks are to be subjected to a double liability is vested exclusively

in Congress. (*Seabury* v. *Green,* 294 U. S. 165, 79 L. ed. 380; *Christopher* v. *Norvell,* 201 U. S. 216, 50 L. ed. 732.) It makes no difference whether the State attempts to control national banks by means of a constitutional or statutory provision, for in either event the State enactment must give way to the superior authority of the national government.

When our present constitution was adopted in 1870, a considerable portion of the banking business of the State was transacted through private banks. However, there were corporate banks some of which had been organized under State laws and others under the act of Congress. It will be observed that section 6 is not by express language limited in its application to stockholders of State banks and, conversely, it is not worded so as to expressly include stockholders of national banks.

Reference to the Debates and Proceedings of the Constitutional Convention fail to disclose that the members of the convention had in mind any specific purpose for which section 6 was to be adopted other than to give depositors in State banks more security than the mere corporate liability. The theme of the debates shows a comparison of the liability of a stockholder of a bank with the liability imposed by law upon those engaged in operating private banks and the debates indicate that the primary purpose for adopting section 6 was to meet this condition. We do not find anything in the debates which indicates that the members of the convention were distinguishing between the liability of stockholders of State banks and the liability of stockholders of banks organized under Federal enactment. Debates & Proceedings, Const. Conv., p. 1686.

Section 6 was first introduced to the convention in a report of the committee on banking and currency. Such report contained eight sections, and the present constitutional provision, section 6, was section 3 in the report. Section 7 of the report directed that those engaged in private bank-

ing should be taxed on the capital actually used in such business. The proceedings show there was prolonged debate in regard to this matter, in which reference was made to national banks, the service they performed, the governmental favors bestowed on them, and the difficulty other banks had in competing with them. Hon. William H. Underwood said: "Our supreme court has decided that national banks organized under act of Congress, are subject to our state laws of taxation. That decision was taken to the supreme court of the United States, and reversed, because we had to conform to the national law in reference to banks of that class. An extra session of the legislature was required to amend our law for taxing such banks." (Debates & Proceedings, Const. Conv., p. 1686.) The title of the case referred to by member Underwood was not given, but evidently it was *People* v. *Bradley,* 39 Ill. 130, decided in 1866 and reversed in *People* v. *Bradley,* 4 Wall. 459, 18. L. ed. 433. Thus, it will be noted that at the same session of the convention at which section 3 of the committee's report was adopted to become section 6 of article XI of the constitution, there was discussion emphasizing the lack of power of the State to exercise any jurisdiction over national banks.

Courts will adopt every reasonable intendment to sustain a law. (*Liberty Foundries Co.* v. *Industrial Com.* 373 Ill. 146; *People ex rel. Sellers* v. *Brady,* 262 Ill. 578.) The constitutional provision in question might have been more explicit and by its terms expressly limited to stockholders of State banks. But where there is neither an express limitation restricting its application to that class of stockholders over which the State had jurisdiction, nor language showing an express inclusion of stockholders of national banks over which the State had no jurisdiction, the courts will apply that intendment which will sustain the law. If it should be said that section 6 was intended to include stockholders of national banks, then it is the

equivalent of saying the makers of the constitution intended an application that would render it void. Such a conclusion would be contrary to well-recognized principles of law.

There is a rule of statutory construction which has been applied to statutes and is equally applicable to this constitutional provision. It is that where a statute comprehends within its general terms two or more subjects or classes, some of which are within the jurisdiction of the legislative power of the State and some of which are outside its authority, the courts, to sustain the law as to the class to which it should have been restricted, will exclude from the operation of the statute the subjects or classes over which the State had no legislative jurisdiction. The application of this rule to a state of facts assumed by the rule is subject to the condition that the language of the statute is so that a separation may be made without destroying the evident intent of the law makers. *Scown* v. *Czarnecki,* 264 Ill. 305; *People ex rel. Akin* v. *Butler Street Foundry and Iron Co.* 201 Ill. 236; *Chicago, Burlington and Quincy Railroad Co.* v. *Jones,* 149 Ill. 361.

In the *Butler Street Foundry case,* the constitutionality of the Anti-Trust Act of 1891 was before the court. Its validity was challenged on the ground that the language of the act was broad enough to include subjects which were beyond the State's legislative jurisdiction and over which the Federal government had control. Recognizing that the language of the statute was subject to such criticism, this court, to sustain the law, adopted the rule of construction excluding the class over which the State had no jurisdiction. The aptness of the language quoted in that case from *Commonwealth* v. *Gagne,* 153 Mass. 205, 26 N. E. 449, to the constitutional question under consideration, leads us to repeat it here. "A law which is unconstitutional within certain limitations, if in terms it exceeds or fails to notice those limitations, may yet be en-

tirely operative within its legitimate sphere and properly held to have the application which thus confines it. Indeed, where two governments, like those of the United States and the commonwealth, exercise their authority within the same territory and over the same citizens, the legislation of that which, as to certain subjects, is subordinate should be construed with reference to the powers and authority of the superior government, and not be deemed as invading them unless such construction is absolutely demanded."

In Cooley's Constitutional Limitations (6th Edition, p. 214,) it is said: "A legislative act may be entirely valid as to some classes of cases, and clearly void as to others. * * * If there are any exceptions to this rule, they must be of cases only where it is evident, from a contemplation of the statute and of the purpose to be accomplished by it, that it would not have been passed at all, except as an entirety, and that the general purpose of the legislature will be defeated if it shall be held valid as to some cases and void as to others."

*People* v. *Gould,* 345 Ill. 288, was a criminal action prosecuted under section 1 of the Banking Act of June 4, 1879. The pertinent part of that statute provided "That if any banker or broker, or person or persons doing a banking business, or any officer of any banking company, or incorporated bank doing business in this State, shall receive" property, when at the time of receiving such property the bank was in an insolvent condition, such party so receiving shall be guilty of embezzlement. The contention was that the language of the statute made it applicable to officers of all banks doing business in the State whether organized under Federal law or State law. We said: "It is a well settled rule that a statute may be in part constitutional and in part unconstitutional, and that in such case the constitutional part of the act will be given effect and the unconstitutional part disregarded, unless the unconsti-

tutional part is of such a character that it may be inferred that without it the legislature would not have passed the act," and referring to cases announcing such principle, it was said "and there are other cases which hold that an act will not be held void because its language may include more than the legislature had the constitutional power to make effectual, and that courts, treating the question as one of legislative power and not of verbal form, will separate statutes valid in part and in part void because in excess of the legislative power, and will disregard the excessive exercise of power and preserve so much as is within the legislative power." *People ex rel. Stuckart* v. *Sandberg Co.* 282 Ill. 245; *Shellabarger Elevator Co.* v. *Illinois Central Railroad Co.* 278 Ill. 333.

Appellant contends that section 6 cannot be sustained by application of the foregoing rule of construction for the reason that a separation of the two classes of bank stockholders cannot be accomplished without qualifying or limiting the language of the section. It is argued that a restriction as to the meaning and scope of the language would amount to an amendment of the constitutional provision by judicial construction. Some of the cases cited in support of such propositions are *United States* v. *Reese,* 92 U. S. 214, 23 L. ed. 563; *United States* v. *JuToy,* 198 U. S. 253, 49 L. ed. 1040; *Butts* v. *Merchants & Miners Transportation Co.* 230 U. S. 126, 57 L. ed. 1422; *Trade Mark Cases,* 100 U. S. 82, 25 L. ed. 550.

This contention is founded on the assumption that the words "Every stockholder of a banking corporation or institution" necessarily includes stockholders of national banks. We have already expressed our disapproval of that view. Some of the cases cited by appellant in support of their contention that the constitutional provision cannot be limited by judicial construction have been distinguished by the court that rendered them. In *Supervisors of Albany County* v. *Stanley,* 105 U. S. 304, 26 L. ed. 1044, the court

was considering the application of the rule of excluding nonjurisdictional classes from the effect of the statute. The *Reese* and *Trade Mark cases* were cited and the court observed that both of said cases recognized the general principle that one part of a statute may be valid and constitutional and another part unconstitutional and void, and that, under certain circumstances, they may be separated. The comment in reference to the two cases was: "It is also to be observed that in both these cases it was a statute creating and punishing offenses criminally which was to be construed in regard to the limited constitutional power of Congress in criminal matters." We believe the distinction made in the *Stanley case* is sound and that the other cases relied upon by appellant may also be distinguished from this case.

In *People* v. *Gould,* 345 Ill. 288, we noted that there was language in the *Reese case* which was not consistent with the rule of this court and we declined to follow the *Reese case.* We adhere to the rule as announced in the *Butler Street Foundry case,* the *Gould case* and others.

The question that remains on this branch of the case is as to whether the constitutional provisions may be applied as limited to stockholders of State banks. In the leading case of *State* v. *Smiley,* 65 Kan. 240, 69 Pac. 199, it was said: "The general doctrine is that only the invalid parts of a statute are without legal efficacy. This is qualified by the further rule that, if the void and valid parts of the statute are so connected with each other in the general scheme of the act that they can not be separated without violence to the evident intent of the legislature, the whole must fail. * * * The instances in which the application of the rule first mentioned most usually occurs are those where separate words, clauses, sentences or sections of the statute are stricken out, as it were, because constitutionally objectionable. However, the rule is not limited to such instances. It applies as well to exclude from

the operation of the statute subjects and classes of things lying without the legislative intent, although comprehended within the general terms of the act, as it does to exclude parts of the verbal phraseology." The rule announced in *Scown* v. *Czarnecki*, 264 Ill. 305; *People* v. *Butler Street Foundry*, 201 Ill. 236, and *Chicago, Burlington and Quincy Railroad Co.* v. *Jones*, 149 Ill. 361, is applicable to section 6 and may be interpreted as applying solely to that class of stockholders over which the State had jurisdiction. For the reasons assigned, section 6 of article XI of the constitution was valid when adopted.

Appellant's alternative contention, that if section 6 of the State constitution was a valid exercise of State power when adopted it has since become invalid, is predicated on the theory certain Federal acts enacted since March 1, 1933, have so changed the law in reference to double liability of stockholders of banks operating in this State that the enforcement of section 6 of the statutes implementing it is violative of the Federal constitution. It is claimed the acts of Congress which authorize the Reconstruction Finance Corporation to subscribe for stock in a State bank, the act which abolished the double liability of stockholders of national banks, and the act which authorized the Federal Deposit Insurance Corporation to insure deposits of banks have made such innovations in the law of double liability of stockholders as to render section 6 violative of the fourteenth amendment of the Federal constitution.

Provisions of the amendment claimed to have been violated are those which direct that no State shall deny any person within its jurisdiction the equal protection of the laws, and the due process clause.

In approaching this question, it is well to analyze appellant's contention so that the discussion may be restricted to the limits prescribed by the question. The exclusive sovereignty of each government over its respective field is conceded, but it is argued that the Federal government

has enacted statutes which have created such conditions in reference to stockholders' liability as to make the State law unconstitutional. It is, not claimed that section 6 or the State statutes discriminate against any citizen of the State, if it were not for the conditions created by operation of the Federal acts. Nor is it claimed that the acts of Congress have invaded a field that belongs to the State, or that it has acted outside the scope of its delegated power.

From such concessions the question is limited to whether a State constitutional provision which in itself operates indiscriminately on all citizens of the State similarly situated may be declared discriminatory and in violation of the equal protection clause of the fourteenth amendment because acts of Congress have created governmental agencies (the Reconstruction Finance Corporation and the Federal Deposit Insurance Corporation) and vested them with powers which, if exercised, grant privileges that exonerate stockholders of certain banks doing business in this State from double liability, while stockholders of banks organized under State' laws may not obtain the same rights on equal conditions.

We will not discuss at length the proposition that a law valid when adopted may, by reason of changed conditions, become invalid. The principle is supported by the following cases: *Nashville C. & St. L. Railway* v. *Walters,* 294 U. S. 805, 79 L. ed. 949; *Abie State Bank* v. *Governor,* 282 U. S. 765, 75 L. ed. 690, and *Vigeant* v. *Postal Telegraph Co.* 260 Mass. 335, 157 N. E. 651.

Appellant has argued at length and submitted an array of facts to support his contention that. the major part of the troubles which bedeviled the banking business of the nation and brought it into an almost complete state of collapse during the depression period was caused by the laws, both Federal and State, which imposed a double liability upon bank stockholders. The facts submitted are informative, but, insofar as appellant urges that the facts

shown necessitate court relief from the double liability of stockholders of State banks, they will be disregarded. Such reference will be made to them as is necessary to present appellant's contentions. However, conclusions reached must be founded on applicable legal principles without regard to the causes which contributed to the failure of the banks during the depression period or the propriety of the policy which motivated the change of the Federal government in regard to double liability of stockholders of banks.

Originally, the Reconstruction Finance Corporation was authorized to make loans to banks that were in financial distress but in 1933 that law was changed in this regard to an authorization to the Reconstruction Finance Corporation to invest its funds in the preferred stock issued by the bank. It was provided by U.S.C.A. Title 12, section 51(d), that if the Secretary of the Treasury was of the opinion that any national banking association or any State bank or trust company was in need of capital in connection with its organization or reorganization, the Secretary, with the approval of the President, could subscribe for preferred stock in such banking association. The material part of the act which pertains to the double liability of stockholders in State banks is as follows: "Nothing in this section shall be construed to authorize the Reconstruction Finance Corporation to subscribe for preferred stock in any State bank or trust company if under the laws of the State in which said State bank or trust company is located the holders of such preferred stock are not exempt from double liability. In any case in which under the laws of the State in which it is located a State bank or trust company is not permitted to issue preferred stock exempt from double liability, or if such laws permit such issue of preferred stock only by unanimous consent of stockholders, the Reconstruction Finance Corporation is authorized, for the purposes of this section, to purchase the legally

issued capital notes or debentures of such State bank or trust company."

Double liability of stockholders of national banks was, prior to 1933, authorized by sections 63 and 64 (U.S.C.A. Title 12) but the acts of Congress of 1933, as amended in 1935, terminated the double liability feature of stockholders, as applied to national banks, as of July 1, 1937. U.S.C.A. Title 12, section 64(a).

Appellant argues that the termination of double liability of stockholders in national banks created a serious situation with State banks in that investors prefer the stock of national banks freed from double liability rather than to acquire the stock of State banks with a liability under section 6. In support of such argument, attention is called to the stipulation of facts which shows that the capital stock of all State banks in 1933 was $69,983,300, and that thereafter it decreased to $43,853,050 in 1944. There is a general statement in the stipulation that the capital stock of all national banks increased during said period but the amount of the increase is not shown. It appears that from June 30, 1943, to June 30, 1944, the capital stock of national banks increased $32,457,000. To show the ratio of capital stock to deposits, the following figures are presented: On December 30, 1944, the capital stock of all State banks was, as stated, $43,853,050. The total deposits were $2,709,930,833.75, thus producing a ratio of deposits to capital stock of 61 to 1. It appears that in 1933 the ratio of capital stock of national banks to deposits was higher than the ratio between the same subjects in State banks, but by 1944 the reverse was true.

Much of appellant's argument centers on the classes created and conditions developed by act of Congress creating and providing for the operation of the Federal Deposit Insurance Corporation. The insurance company's existence dates from June 16, 1933. The statute has been amended

at various times and the provisions of the act are now available to every State bank. However, the evidence showed there are some State banks in this State which have not become insured members of the insurance company. Reference to the provisions of the Federal act will be limited to those sections which provide methods for a State bank to become an insured member, the conditions on which an insured member may discontinue its membership and the provision pertaining to the double liability of stockholders of State banks.

In general, the act divides State banks that are to become members into two classes, (1) those banks that are members of the Federal Reserve System, and (2) those that are not. It should be noted that a State bank (if it can meet the requirements of the act) may subscribe to the stock of a Federal Reserve Bank and become a member of the Federal Reserve System, (U.S.C.A. Title 12, sec. 321,) and by the same act (section 328) may withdraw from such membership on six months' notice. The membership of a State bank in the Federal Reserve System is thus purely voluntary, both in its inception and duration. *Hiatt* v. *United States C. C.* 4 Fed. 2d. 374.

By U.S.C.A. Title 12, section 264(e)(1) it is provided that State banks which were licensed by the Secretary of the Treasury on or before August 23, 1935, "shall be and continue to be without application or approval an insured bank." By subsection (e)(2) "every State bank which after August 23, 1935, was converted into a national member bank or became a member of the Federal Reserve System" was declared to be an insured bank after certification of the happening of either one of such events. By subsection (f)(1) every bank not a member of the Federal Reserve System but which was on June 30, 1935, or thereafter became a member of the temporary Federal Deposit Insurance Fund or of the Fund for Mutuals should "be and continue to be without application or approval an in-

sured bank" and by subsection (f)(2) any State bank not a member of the Federal Reserve System would, upon application to and approval by the insurance company, become an insured bank.

Any State bank which was a member of the Federal Reserve System ceases to be an insured member whenever it withdraws as a member of the Federal Reserve System, (U.S.C.A. Title 12, sec. 264 (i)(2),) and any insured bank not a member of the Federal Reserve System may withdraw as an insured member at any time on giving ninety days' written notice and complying with other conditions not material here.

U.S.C.A. Title 12, section 264 (1)(7), deals with the right of the insurance company to be subrogated to the rights of the depositor whose claim the insurance company has paid in whole or in part. It provides, as to deposits in State banks, that the insurance company "shall not make any payment to any depositor until the right of the corporation to be subrogated to the rights of such depositor * * * shall have been recognized either by express provision of State law, by allowance of claims by the authority having supervision of such bank, by assignment of claims by depositors, or by any other effective method." It is expressly provided that subrogation shall include the right on the part of the corporation to receive the same dividends from the proceeds of the assets of such closed bank and recoveries on account of stockholders' liability as would have been payable to the depositor on a claim for the insured deposit "but such depositor shall retain his claim for any unsecured portion of his deposit." The following appears as a proviso to said section: "That, with respect to any bank which closes after May 25, 1938, the Corporation shall waive, in favor only of any person against whom stockholders' individual liability may be asserted, any claim on account of such liability in excess of the liability, if any, to the bank or its creditors, for the amount unpaid upon

his stock in such bank; but any such waiver shall be effected in such manner and on such terms and conditions as will not increase recoveries or dividends on account of claims to which the Corporation is not subrogated; Provided further, That the rights of depositors and other creditors of any State bank shall be determined in accordance with the applicable provisions of State law."

That Congress intended to make the benefits of the Federal Deposit Insurance Act available to all State banks on as near equal terms as possible is shown by section 264(y), which is as follows: "It is not the purpose of this section to discriminate, in any manner, against State nonmember, [a State bank which is not a member of the Federal Reserve System] and in favor of, national or member banks; but the purpose is to provide all banks with the same opportunity to obtain and enjoy the benefits of this section. No bank shall be discriminated against. because its capital stock is less than the amount required for eligibility for admission into the Federal Reserve System."

Appellant argues that the act of Congress which withholds power from the Reconstruction Finance Corporation to subscribe for stock in State banks where the State law provides for superadded liability creates a condition whereby investors of bank stock prefer stock in banks without the double liability feature, and that stockholders in State banks are suffering injury which appellant says in its argument "operates to the detriment of stockholders of an Illinois State bank just as a confiscatory rate law takes property from a public utility and its stockholders and thereby deprives persons of their property without due process of law." Likewise, it is argued that the act of Congress abrogating the superadded liability of stockholders of national banks operates to the injury of State banks and their stockholders. Attention is called to the fact that there are hundreds of national banks doing business in

Illinois, performing the same general functions of banking as State banks and yet the stockholders of the national banks are exonerated from the double liability while section 6 continues to impose it on the stockholders of State banks. An array of figures is submitted to show the damaging effect such condition creates in the business conducted by banks organized under State laws, but in view of the conclusion reached as to the applicable legal principles the factual situation will not be stated.

The Federal Deposit Insurance Corporation insures all deposits of a bank except that part of any which exceeds $5000. The right of subrogation and the requirement that the insurance company shall waive the superadded liability to which it has been subrogated is limited to that amount of the deposits paid by it. Thus a depositor whose account was in excess of $5000 retains the claim for superadded liability against the stockholders to the amount his deposit exceeds $5000. If the nonsubrogated claims for a given period are 10 per cent of the total deposit liability paid by the insurance company for that period, then it would follow that the company would waive 90 per cent of the superadded liability and the depositors holding the nonsubrogated claims would be entitled to assert their claims for the other 10 per cent. It is also urged that a stockholder of a State bank not insured is subject to a superadded liability of 100 per cent, while the stockholders of an insured State bank may escape if the deposits of his bank were all within the insurable clause of $5000 or less. It is said this is a denial of equal protection of the law. Appellant observes that it is hardly probable that the superadded liability against which nonsubrogated claims may be asserted would be the same in all banks and it is claimed this possibility of unequal liability creates an inequality in the law.

In *McCulloch* v. *Maryland*, 4 Wheat. 316, 4 L. ed. 579, it was said that the Constitution of the United States did

not expressly delegate the power to Congress to create corporations but the power conferred to "make all needful rules and regulations respecting the territory or other property belonging to the United States" and the power to make all laws which should be necessary and proper for carrying into execution the express powers of government included the implied power to create a corporation, if in the discretion of Congress it was considered such a corporation was required in the execution of the powers granted. In referring to the service a bank renders the government, it was described as "a convenient, a useful and essential instrument in the prosecution of its fiscal operations." (*Osborn* v. *Bank of the United States*, 9 Wheat. 738, 6 L. ed. 204; *Farmers & Merchants National Bank* v. *Dearing*, 91 U. S. 29, 23 L. ed. 196.) It has been held that institutions created by Congress, such as the Federal Reserve System, Federal Land Banks and Federal Deposit Insurance Corporation, are authorized on the principle "that a power to create implies a power to preserve." *First National Bank* v. *Fellows*, 244 U. S. 415, 61 L. ed. 1233; *Smith* v. *Kansas City Title & Trust Co.* 255 U. S. 180, 65 L. ed. 577; *Weir* v. *United States*, 92 Fed. 2d 634. (C.C.A.)

Thus, with the accepted doctrine that a State may create and control banks we have an illustration of the result of our dual form of government,—two sovereignties each possessing the power to create banks to operate in the same territory. If Congress, in the exercise of a power, elects to enter a field not previously included within its legislative jurisdiction, then all existing State laws must give way to the Federal act. If, in the instant case, we had the proposition where Congress possessed the power to abolish superadded liability of stockholders of State banks and had exercised such power, then such act being valid, the State law would necessarily become inoperative. But the Federal acts referred to do not abolish the double lia-

bility of stockholders of State banks as declared by section 6. From what has been said, it is apparent that whether a State bank shall make application to become a member of the Federal Reserve System or of the Federal Deposit Insurance Corporation is at the option of the bank. If it elects to become a member of either or both of said governmental agencies, then it is subject to Federal regulation, inspection and the making of reports to such agencies.

It must be conceded the differences between the Federal and State laws pertaining to double liability make stock of banks operating under the Federal jurisdiction a preferred investment over stock issued by a bank operating under section 6 of our constitution. But such difference is not the character of discrimination against which the fourteenth amendment was directed. By the language of the amendment it is a prohibition against State action, (*Corrigan* v. *Buckley,* 271 U. S. 322, 70 L. ed. 969; *Virginia* v. *Rives,* 100 U. S. 313; 25 L. ed. 667,) and it is not a restriction upon acts of Congress, (*Truax* v. *Corrigan,* 257 U. S. 312, 66 L. ed. 254; *Carleton Screw Products Co.* v. *Fleming,* 126 Fed. 2d 537,) nor does it prohibit action by private individuals.

The Federal Deposit Insurance Corporation Act recognizes the right of the State to impose a superadded liability upon stockholders of State banks. Every act taken by a State member bank under the insurance act is made in recognition of the double liability features of section 6. If the insurance corporation is required to pay a loss to a depositor, the double liability imposed by section 6 is not discharged by operation of law but by the waiver executed by the insurance corporation. If Congress elects to have the insurance corporation waive its rights of subrogation, then the discrimination, if any exists, arises by reason of the waiver and not by the enforcement of section 6 of the State constitution. There is no warrant for holding that section 6, operating under the present requirements of

the Federal acts, is unconstitutional in that it deprives any of the citizens of the State of equal protection of the laws or that it violates the due process clause of the fourteenth amendment.

For the reasons assigned, the decree is affirmed.

*Decree affirmed.*