Request of House of Representatives,
No. 4768.

OPINION OF THE JUSTICES.

Submitted June 30, 1959.

Answer returned July 9, 1959.

The following resolution adopted by the House of Representatives on June 23, 1959, was filed in this court on June 24, 1959:

"WHEREAS, the House of Representatives has pending before it House Bill No. 489, An act authorizing the establishment of a branch bank in Penacook, and

"WHEREAS, questions have arisen concerning the constitutionality of this legislation, now therefore be it

"RESOLVED, that the Justices of the Supreme Court be respectfully requested to give their opinion upon the following questions of law:

"1. Does any provision of said bill violate any provisions of the constitution of the state of New Hampshire or of the constitution of the United States?

"2. If the legislature enacts the above mentioned bill in the emergency described and a branch bank is operated in Penacook, would it be a violation of the constitution of the state for the state government to deny or prohibit the opening of other branch banks in Penacook or in any other town in the state by other banking institutions?"

The following answer was returned:

*To the House of Representatives:*

The undersigned Justices of the Supreme Court submit the following answer to the inquiries contained in your resolution with reference to House Bill No. 489, entitled "An act authorizing the establishment of a branch bank in Penacook."

Section 1 thereof provides that "It is the limited purpose of this act to meet the emergency occasioned by the failure . . . to reorganize the Valley Trust Company of Penacook . . . the public convenience and necessity require the existence of banking facilities in Penacook . . . the general court views the loss of banking facilities . . . and the consequent hardship . . . as a special emergency." Section 2 provides that either of the two national banks doing business in Concord may apply to the Comptroller of the Currency of the United States for a certificate of approval to operate a single branch in Penacook and that only one such certificate is to be issued.

Section 3 states that "Nothing in this act shall be construed as conferring upon any other national bank authority to apply for a

certificate of approval to operate a branch. Nothing herein shall be construed as conferring upon any savings bank, trust company or building and loan association, organized under the laws of this state, power to establish and operate any branch."

National banks doing business in this state are instrumentalities of the federal government and are subject to the paramount authority of the United States. *M'Culloch* v. *Maryland,* 4 Wheat. (U. S.) 316; *Henrys* v. *Raboin,* 395 Ill. 118; *Opinion of the Justices,* 102 N. H. 106.

12 U. S. C. A., *s.* 36 (66 Stat. 633) provides that "c) A national banking association may, with the approval of the Comptroller of the Currency, establish and operate new branches: (1) Within the limits of the city, town or village in which said association is situated, if such establishment and operation are at the time expressly authorized to State banks by the law of the State in question; and (2) at any point within the State in which said association is situated, if such establishment and operation are at the time authorized to State banks by the statute law of the State in question by language specifically granting such authority affirmatively and not merely by implication or recognition, and subject to the restrictions as to location imposed by the law of the State on State banks."

Congress by the above provision has pre-empted the field of regulating the operation of branches by national banks. *Attorney General* v. *National Bank,* 338 Mich. 610. "The history of federal legislation regarding branch banking and the statutes applying thereto leave a clear and definite impression that Congress intended, with respect to the location of branches, that a national bank should have no greater rights than it would if it were a state bank, and that a national bank was to be permitted to establish and operate a branch in a state only at such a point as it could, by express provisions of a state statute, establish and operate a branch if it were then a state bank." *National Bank of Detroit* v. *Wayne Oakland Bank,* 252 F. (2d) 537, 540 (3d Cir. 1958).

New Hampshire has never enacted a law specifically authorizing the operation of a branch by a state bank. *Opinion of the Justices,* 102 N. H. 106. In the absence of such legislation there are no branch banks operating in this state. See 7 Am. Jur., Banks, *s.* 23, *pp.* 39, 40; New England Business Review Federal Reserve Bank of Boston, April 1959; 74 Banking L. J. 942. House Bill No. 489 provides in section 3 that "Nothing herein shall be

construed as conferring upon any savings bank, trust company or building and loan association, organized under the laws of this state, power to establish and operate any branch." This provision is the direct opposite of the express authorization to state banks to operate branches required by 12 U. S. C. A., s. 36, to enable the Comptroller of the Currency of the United States to issue a certificate of approval to a national bank to operate a branch in New Hampshire. *National Bank of Detroit* v. *Wayne Oakland Bank, supra.*

The answer to your inquiries is that House Bill No. 489 is contrary to the federal law which governs the matter.

FRANK R. KENISON.
LAURENCE I. DUNCAN.
AMOS N. BLANDIN, JR.
EDWARD J. LAMPRON.
STEPHEN M. WHEELER.

July 9, 1959.